IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OLIN EARGLE,<br>individually and on behalf of a class,<br><br>            Plaintiff,<br><br>    v.<br><br>B & H SUBS, INC.,<br>and DOES 1-10,<br><br>            Defendants. | 08 C 1426<br>Judge Darrah<br>Magistrate Judge Keys |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Plaintiff has requested that this Court enter an order determining that this action may proceed as a class action against defendant. This memorandum is submitted in support of that motion.

**I.    NATURE OF THE CASE**

The Seventh Circuit has held that cases such as the one before this Court should be resolved on a class-wide basis. It specifically found that,

> to decide whether [a defendant] has adhered to the statute [the Fair Credit Reporting Act], a court need only determine whether the four corners of the offer satisfy the statutory definition (as elaborated in [*Cole v. U.S. Capital, Inc.,* 389 F.3d 719 (7th Cir. 2004)]).... ***These questions readily may be resolved for a class as a whole***. [*Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 956 (7th Cir. 2006) (emphasis added).]

Since *GMAC Mortgage*, District Judges have followed the Seventh Circuit's holdings in numerous cases. For example, in a case with a similar fact pattern, the Court found that the class action procedure was superior to all other resolution methods, holding that

> a class action is a superior method of adjudication when "economies of time, effort, and expense" are achieved "without sacrificing procedural fairness." [*Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997).] Additionally, a class action is an appropriate and superior means of adjudication when the potential recovery on a claim is "too slight to support individual suits, but injury is substantial in the aggregate." [*GMAC Mortgage* ], 434 F.3d at 953 (citing *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344-345 (7th Cir. 1997)). Such is the case here. [*Claffey v. River Oaks Hyundai, Inc.*, 238 F.R.D. 464, 468 (N.D.Ill. 2006).]

1

See also, *e.g.*, *Murray v. E*Trade Financial Corp.*, 240 F.R.D. 392 (N.D.Ill. 2006); *Cavin v. Home Loan Center, Inc.*, 236 F.R.D. 387 (N.D.Ill. 2006); *Murray v. New Cingular Wireless Services, Inc.*, 232 F.R.D. 295 (N.D.Ill. 2005).

    A.    *Plaintiff's Claims*

Plaintiff filed this class action under the Fair Credit Reporting Act ("FCRA") as amended by the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"), contending that defendant violated a provision designed to prevent identity theft. 15 U.S.C. §1681c(g) provides that "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction."

Defendant B & H Subs, Inc. provided credit card receipts to plaintiff showing the consumer's full credit card number, and the expiration date on that card, on August 22, 2007 and January 10, 2008— the latter coming more than a year after §1681c(g) became effective. Plaintiff claims that this change in the law was widely publicized, that defendant's contracts contained images of what a receipt had to look like, and that defendant's non-compliance many months after the effective date demonstrates that defendant willfully violated the law. Discovery in this matter has not yet commenced; plaintiff respectfully submits that the evidence will show that defendant violated the FCRA, as amended by FACTA, willfully.

    B.    *The holdings of* GMAC Mortgage *support certification*

*GMAC Mortgage* is on point supporting plaintiff's arguments that a class should be certified in this case. *GMAC Mortgage* held, in pertinent part, that:

    1.    the class action procedure "was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate" [*GMAC Mortgage*, 434 F. 3d at 953];

    2.    statutory damages provide relief for actual losses that are small and hard to quantify, without proof of injury [*Id.*]; and

    3.    an award to the class "that would be unconstitutionally excessive may be

> reduced.... but constitutional limits are best applied after a class has been certified [when] a judge may evaluate the defendant's overall conduct and control its total exposure" [*Id*. at 954 (citing *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408 (2003))].

These factors set forth by the Seventh Circuit clearly indicate that the matter before this Court is suitable for class certification. Proof in this case is standardized—from the receipts that were given to plaintiffs and other customers, to the hardware and software that produced them.

## II.   STANDARD FOR CLASS CERTIFICATION

Class actions are essential to enforce laws protecting consumers. As the Court stated in *Eshaghi v. Hanley Dawson Cadillac Co.,* 214 Ill.App.3d 995, 574 N.E.2d 760 (1st Dist. 1991):

> In a large and impersonal society, class actions are often the last barricade of consumer protection.... To consumerists, the consumer class action is an inviting procedural device to cope with frauds causing small damages to large groups. The slight loss to the individual, when aggregated in the coffers of the wrongdoer, results in gains which are both handsome and tempting. The alternatives to the class action—private suits or governmental actions—have been so often found wanting in controlling consumer frauds that not even the ardent critics of class actions seriously contend that they are truly effective. The consumer class action, when brought by those who have no other avenue of legal redress, provides restitution to the injured, and deterrence of the wrongdoer. [*Id*., 574 N.E.2d at 764, 766.]

Cases essentially the same as the present one, and brought by counsel who are representing plaintiff here, were certified as class actions in *E*Trade*, *River Oaks Hyundai*, *Home Loan Center*, and *New Cingular*, *supra*. In each of these cases, as well as others listed in Exhibit E, plaintiff's counsel has been appointed as class counsel, having been found adequate under Fed.R.Civ.P. 23(a)(4).

Classes have been certified in a number of other FCRA cases as well. *Wood v. Capital One Auto Finance*, 2006 U.S. Dist. LEXIS 67513 (E.D.Wis. Sept. 19, 2006). See also *In re Farmers Insurance Co., Inc., FCRA Litigation,* 2006 U.S. Dist. LEXIS 27290 (W.D.Okla. Apr. 13, 2006); *In re Trans Union Corp. Privacy Litigation*, 2005 U.S. Dist. LEXIS 17548 (N.D.Ill. August 17, 2005); *Thomas v. NCO Financial Systems, Inc.*, 2004 U.S. Dist. LEXIS 5405 (E.D.Pa., March 31, 2004) (settlement; illegal "reaging" of old debts on credit reports); *Perry v. FleetBoston Financial Corp.*, 229 F.R.D. 105 (E.D.Pa. 2005) (settlement; illegal accessing of

credit reports); *Clark v. Experian Information Solutions, Inc.*, 2004 U.S. Dist. LEXIS 28324 (D.S.C., Jan. 14, 2004) (settlement, improper reporting of debts); *Ciccarone v. B. J. Marchese, Inc.*, 2004 U.S. Dist. LEXIS 26489 (E.D.Pa., Dec. 14, 2004), later opinion, 2004 U.S. Dist. LEXIS 25747 (E.D.Pa., Dec. 22, 2004) (settlement; alleged unauthorized accessing of consumer reports); *Stoner v. CBA Information Services,* 352 F.Supp.2d 549 (E.D.Pa. 2005) (settlement; alleged policy of refusing to investigate consumer disputes regarding items on their credit reports); *Ashby v. Farmers Ins. Co.,*, 2004 U.S. Dist. LEXIS 21053 (D.Ore. Oct. 18, 2004) (class certified in action alleging failure to give notice of adverse action); *Braxton v. Farmer's Ins. Group,* 209 F.R.D. 654 (N.D.Ala. 2002) (similar); *White v. Imperial Adjustment Corp.*, 2002 U.S. Dist. LEXIS 26610 (E.D.La., Aug. 6, 2002), affirmed by unpublished opinion, 2003 U.S.App. LEXIS 20162 (5th Cir., Oct. 2, 2003), later opinion, 2005 U.S.Dist. LEXIS 13382 (E.D.La., June 28, 2005) (impermissible accessing of consumer reports); and *Mathews v. Government Employees Ins. Co.,* 23 F.Supp.2d 1160 (S.D.Cal. 1998) (same).

In the present case, the critical issues are (a) whether Defendant had a practice of providing customers with a sales or transaction receipt on which Defendant printed more than the last five digits of the credit card or debit card and/or the expiration date of the credit card or debit card; and (b) whether Defendant thereby willfully violated FACTA. Such claims can be resolved, in part or in whole, at summary judgment, as has been the case in actions involving the prescreening of credit information. *Murray v. IndyMac Bank, FSB*, 461 F. Supp. 2d 645 (N.D.Ill. 2006); *Murray v. Sunrise Chevrolet, Inc.*, 441 F.Supp.2d 940 (N.D.Ill. 2006). Both of these inquiries are uniform with respect to the entire class, and will be decided on facts that apply equally to all class members.

This Court has the discretion to adjust the statutory damages, if necessary, to address any concerns about the size of a potential award to the class, after class certification is granted. *GMAC Mortgage* held that a limitation on supposedly excessive damages, on due process grounds, is best applied after a class has been certified . Then a judge may evaluate the

defendant's overall conduct and control its total exposure. "Reducing recoveries by forcing everyone to litigate independently—so that constitutional bounds are not tested, because the statute cannot be enforced by more than a handful of victims—has little to recommend it." *GMAC Mortgage*, 434 F.3d at 954.

Furthermore, possibility of excessive damages "might be invoked, not to prevent certification, but to nullify that effect and reduce the aggregate damage award." *Parker v. Time Warner Entertainment Co.,* 331 F.3d 13, 22, 27-28 (2d Cir. 2003); *State of Texas v. American Blast Fax, Inc.*, 164 F.Supp.2d 892 (W.D.Tex. 2001) (same).

### III.   THE PROPOSED CLASS MEETS THE CERTIFICATION REQUIREMENTS

*A.   Numerosity*

Fed.R.Civ.P. 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." "When the class is large, numbers alone are dispositive...."  *Riordan v. Smith Barney*, 113 F.R.D. 60, 62 (N.D.Ill.1986).  Where the class numbers at least 40, joinder is generally considered impracticable. *Cypress v. Newport News General & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967) (18 sufficient); *Swanson v. American Consumer Industries,* 415 F.2d 1326, 1333 (7th Cir. 1969) (40 sufficient); *Riordan, supra*, 113 F.R.D. 60 (10-29 sufficient); *Philadelphia Electric Co. v. Anaconda American Brass Co.*, 43 F.R.D. 452, 463 (E.D.Pa. 1968) (25 sufficient); *Sala v. National R. Pass. Corp.*, 120 F.R.D. 494, 497 (E.D.Pa. 1988) (40-50 sufficient); *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 184 (N.D. Ill. 1992) (about 70).  It is not necessary that the precise number of class members be known.  "A class action may proceed upon estimates as to the size of the proposed class." *In re Alcoholic Beverages Litigation*, 95 F.R.D. 321 (E.D.N.Y. 1982); *Lewis v. Gross*, 663 F. Supp. 1164, 1169 (E.D.N.Y. 1986).

Here, the class size is currently unknown; plaintiff will seek in discovery to ascertain the exact number of class members. However, defendant operates a Subway restaurant near downtown Chicago with considerable lunchtime traffic. (See Motion, ¶11.)  Defendant provided

non-compliant receipts to plaintiff many months after the effective date of 15 U.S.C. §1681c(g). This, combined with the day-to-day traffic of a restaurant, allows a reasonable inference of numerosity. Specifically, the non-compliant receipt given to plaintiff on January 10, 2008 came 402 days after the December 4, 2006 effective date of §1681c(g). In the unlikely case where there was only one credit card or debit card transaction at this restaurant *every four days*, there would be approximately 100 class members—more than enough to satisfy Fed.R.Civ.P. 23(a)(1).

     B.     *Predominance of common questions of law or fact*

Fed.R.Civ.P. 23(a)(2) requires that there be a common question of law *or* fact. Rule 23(b)(3) requires that the questions of law or fact common to all members of the class predominate over questions pertaining to individual members.

These requirements are normally satisfied when there is an essential common factual link between all class members and the defendant for which the law provides a remedy. *Halverson v. Convenient Food Mart, Inc.,* 69 F.R.D. 331 (N.D. Ill. 1974). Where a question of law involves "standardized conduct of the defendant toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement... is usually met." *Franklin v. City of Chicago,* 102 F.R.D. 944, 949 (N.D.Ill. 1984); *Patrykus v. Gomilla,* 121 F.R.D. 357, 361 (N.D.Ill. 1988). The authorities hold that cases dealing with the legality of standardized documents or conduct are generally appropriate for resolution by means of a class action because the document or conduct is the focal point of the analysis. *Halverson,* 69 F.R.D. 331; *Haroco v. American Nat'l Bank,* 121 F.R.D. 664, 669 (N.D. Ill. 1988) (improper computation of interest); *Kleiner v. First Nat'l Bank,* 97 F.R.D. 683 (N.D.Ga. 1983) (same); *Heastie v. Community Bank,* 125 F.R.D. 669 (N.D.Ill. 1989) (execution of home improvement financing documents in sequence that evaded consumers' rescission rights). This is true even though the nature and amount of damages may differ among the members of the class. *Id.*

In this case, the "common nucleus of operative fact," *Halverson,* 69 F.R.D. at 335, is that defendant provided to plaintiff and the class members noncompliant receipts. The dispositive

issues— indeed, the *only* issues—are (1) whether the material provided to plaintiff complies with 15 U.S.C. §1681c(g), and (2) whether defendant violated the FCRA willfully.

The alleged failure to comply with FACTA is the same for each person who received a noncompliant receipt; thus, each class member has the same claim. *GMAC Mortgage* held that this sort question does not call for any sort of individualized inquiry. Accordingly, the questions of whether noncompliant receipts were provided and whether the FACTA violation was willful depends on facts involving defendant's activities, and not the activities of plaintiff or class members.

The only individual issue is the identification of the consumers who were provided with a noncompliant receipt. At any rate, identification of class members is not an obstacle to class certification. *Heastie v. Community Bank, supra*, 125 F.R.D. 669 (N.D.Ill. 1989) (court found that common issues predominated where individual questions of injury and damages could be determined by "merely comparing the contract between the consumer and the contractor with the contract between the consumer and Community Bank"); *Wilkinson v. F.B.I.*, 99 F.R.D. 148, 157 (C.D.Cal. 1983) ("a need for individual proof of damages would not preclude class certification. The amount of damages is invariably an individual question and does not defeat class treatment.'"); *Franklin,* 102 F.R.D. at 949 (similar).

C.    *Typicality*

Rule 23 requires that the claims of the named plaintiff be typical of the claims of the class:

> A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory. The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact. [*De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted).]

In the instant case, typicality is inherent in the class definition. Each of the class members has been subjected to the same practice as the named plaintiff.

    D.    *Adequacy*

The rule also requires that the named plaintiff provide fair and adequate protection for the interests of the class.  That protection involves two factors:  (a) the plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (b) the plaintiff must not have interests antagonistic to those of the class.  *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992); *accord, Wetzel v. Liberty Mutual Ins. Co.,* 508 F.2d 239, 247 (3d Cir. 1975); *In re Alcoholic Beverages Litigation,* 95 F.R.D. 321.

Plaintiff understands the obligations of a class representative, and has retained experienced counsel, as is indicated by Exhibit E, which sets forth counsel's qualifications.  Plaintiff's counsel brought the seminal cases of *Cole* and *GMAC Mortgage*, and argued the appeal in *Cole*.  As listed above, several Courts have certified FCRA class actions finding plaintiff's same counsel adequate.  Plaintiff's counsel has also been approved as class counsel in scores of additional consumer protection cases.  (Exhibit E.)

Another relevant consideration under Rule 23(a)(4) is whether the interests of the named plaintiff are coincident with the general interests of the class.  Here, both plaintiff and the class members seek money damages as the result of defendant' violation of the FCRA.  Given the identity of claims between plaintiff and the class members, there is no potential for conflicting interests in this action.  There is no antagonism between the interests of the named plaintiff and those of the class.

    E.    *Superiority*

In *GMAC Mortgage*, the Seventh Circuit held that cases such as this one, where hundreds of people have exactly the same claim, are well-suited for class resolution:

> [Fed.R.Civ.P] 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate. See, *e.g.*, *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344-345 (7th Cir. 1997). Reliance on federal law avoids the complications that can plague multi-state classes under state law, see *In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*, 288 F.3d 1012 (7th Cir. 2002), and society may gain from the deterrent effect of financial awards. The practical alternative to class litigation is punitive damages, not a fusillade of small-

stakes claims. See *Mathias v. Accor Economy Lodging, Inc.*, 347 F.3d 672 (7th Cir. 2003). [*GMAC Mortgage*, 434 F.3d at 953.]

Generally speaking, efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented. *Eovaldi v. First Nat'l Bank,* 57 F.R.D. 545 (N.D. Ill. 1972).  The Court is required to determine the best available method for resolving the controversy in keeping with judicial integrity, convenience, and economy.  *Scholes*, 143 F.R.D. at 189; *Hurwitz v. R.B. Jones Corp.,* 76 F.R.D. 149 (W.D.Mo. 1977).  It is proper for a court, in deciding the "best" available method, to consider the "....inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc., supra,* 503 F.2d 1161, 1165 (7th Cir. 1974).

In this case there is no better method available for the adjudication of the claims which might be brought by each individual consumer.  The vast majority of consumers are undoubtedly unaware that their rights are being violated.  Furthermore, the filing of hundreds, or thousands, of FCRA suits against Defendant would be unduly burdensome to the Courts; judicial efficiency would be greatly promoted through the adjudication of identical claims through a single proceeding.

The fact that there are large numbers of class members "is no argument at all" against certification. *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 660-61 (7th Cir. 2004).  "The more claimants there are, the more likely a class action is to yield substantial economies in litigation.  It would hardly be an improvement to have in lieu of this single class action 17 million suits each seeking damages of $15 to $30.... The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.  But a class action has to be unwieldy indeed before it can be pronounced an inferior alternative—no matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied—to no litigation at all." *Id. GMAC Mortgage* concurred with this

view, finding that:

> reducing recoveries by forcing everyone to litigate independently—so that constitutional bounds are not tested, because the statute cannot be enforced by more than a handful of victims—has little to recommend it. [*GMAC Mortgage*, 434 F.3d at 954.]

The special efficacy of the consumer class action has been noted by the courts and is applicable to this case. *In re Folding Carton Antitrust Litigation,* 75 F.R.D. 727, 732 (N.D. Ill. 1977), noted that

> a class action permits a large group of claimants to have their claims adjudicated in a single lawsuit.  This is particularly important where, as here, a large number of small and medium sized claimants may be involved.  In light of the awesome costs of discovery and trial, many of them would not be able to secure relief if class certification were denied . . . . (Citations omitted.)

Furthermore, *Lake v. First Nationwide Bank,* 156 F.R.D. 615, 628-629 (E.D.Pa 1994) held that,

> given the relatively small amount recoverable by each potential litigant, it is unlikely that, absent the class action mechanism, any one individual would pursue his claim, or even be able to retain an attorney willing to bring the action.  As Professors Wright, Miller and Kane have discussed, in analyzing consumer protection class actions such as the instant one, 'typically the individual claims are for small amounts, which means that the injured parties would not be able to bear the significant litigation expenses involved in suing a large corporation on an individual basis.  These financial barriers may be overcome by permitting the suit to be brought by one or more consumers on behalf of others who are similarly situated.'  7B Wright et al., §1778, at 59; see *e.g.*, *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 809 (1985) ('Class actions . . . may permit the plaintiff to pool claims which would be uneconomical to litigate individually.')  The public interest in seeing that the rights of consumers are vindicated favors the disposition of the instant claims in a class action form.

Class certification will provide an efficient and appropriate resolution of the controversy. *Zanni v. Lippold,* 119 F.R.D. 32, 35 (C.D.Ill. 1988).

### IV.   CONCLUSION

The proposed class meets the requirements of Rules 23(a) and 23(b)(3).  Plaintiff respectfully requests that this Court certify a class as set forth above.

> Respectfully submitted,
>
> s/Thomas E. Soule
> Thomas E. Soule

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Thomas E. Soule
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com